DENNIS, Justice.
The bar association seeks to have Maurice D. Robinson suspended from the practice of law for disciplinary rule violations.
*502 Pleadings
The bar association alleges that respondent Robinson violated disciplinary rules 1-102(A) and 9-102 in that between July 29, 1981 and October 30, 1983 he on many occasions converted money belonging to the clients of the firm of Kopfler and Robinson to his own personal use by drafting or causing to be drafted checks on the firm’s trust account payable to his own personal benefit.
In a second specification the bar alleges that respondent also violated DR 9-102(A) by converting funds in the law firm’s operating account to his own personal use without his partner’s knowledge or consent.
Evidence
Respondent, Maurice D. Robinson, was admitted to the practice of law by this court in 1976. He formed a partnership with John Kopfler for the practice of law in Hammond, Louisiana. Kopfler was elected City Judge of the City of Hammond on January 1, 1979. Because of Kopfler’s preoccupation with his judicial duties, Robinson took over management of the firm in July 1981 and provided substantially all its legal services. Robinson’s wife was an employee of the firm and authorized to sign checks on its bank accounts. From July 1981 until November 1983 Robinson and his wife wrote checks on the firm’s office and trust accounts to pay for their personal and family expenses. These expenses included clothing, children’s school tuition, construction of a swimming pool, domestic employees’ wages and payroll taxes, renovation of a residence, purchase of real estate, personal auto repairs, payment of a personal loan, payment of personal credit card charges, drug and department-store bills, and over $12,000 in miscellaneous expenses. On the stubs of some checks, Robinson made entries falsely indicating that the funds had been spent on client or firm expenses.
In October 1983 Judge Kopfler became suspicious and inspected the firm’s records and accounts. He discovered that respondent and his wife had paid for large amounts of personal and family expenses with checks written on the firm’s office and clients’ trust accounts. Robinson at first falsely told Kopfler that there was no irregularity in the clients’ trust account, but then readily admitted writing checks for personal use on the account when confronted with the discrepancies. Judge Kopfler terminated authorization of further checks, personally guaranteed any overdrafts, and obtained the bank’s agreement to pay all outstanding checks drawn on both accounts. After all the checks had cleared the bank, the firm’s office account was overdrawn $140,210.06, and the clients’ trust account had a deficit of $27,979.76.
Respondent accepted complete responsibility for the overdrafts and agreed to provide whatever compensation was necessary. He withdrew from the firm and compensated Judge Kopfler for the firm’s losses by transferring to Kopfler his one-half interest in the practice, the law office building, the office equipment, and the office library, and by paying Kopfler a lump sum in cash. Kopfler testified that complete restitution had been made to his satisfaction. Despite respondent’s actions, no client was damaged.
Robinson testified that he had not intended to withdraw any client funds from the trust account. He indicated that he had believed there was enough money due the firm in the trust account to cover all of the checks written for his personal use. He attributed the large overdraft of the trust account to his poor bookkeeping. However, Robinson’s testimony was seriously undermined by his failure to explain why funds due the firm were not transferred to the firm’s operating account before he took his share, why he did not keep at least an informal record of the amounts of earned fees in the trust account as opposed to the amounts withdrawn for his personal use, why he made false entries in the trust account check register as to the purpose of some checks, or how he could have a reasonable belief that he had not jeopardized client funds in view of the fact that he had treated the trust account on many occa *503 sions as if it were his own personal account.
The record does, however, contain mitigating factors. Respondent fully admitted his responsibility for the irregular withdrawals and overdrafts and cooperated in the investigation and examination of the separate accounts. None of the clients of Kopfler and Robinson were harmed in any way. A court of appeal judge testified on behalf of Robinson as a character witness, stating that he still holds Robinson in high regard. Robinson has and continues to give generously of his time and service in behalf of his church and social and civic programs in the Hammond area. In the district attorney’s opinion Robinson’s misconduct did not warrant criminal prosecution. Complete restitution has been made to the satisfaction of Kopfler. Finally, there have been no prior disciplinary complaints or actions filed against Robinson.
In LSBA v. Hinrichs, 486 So.2d 116 (La.1986), we explained the disciplinary rule prohibiting a lawyer from commingling or mishandling client funds.
Accordingly, an attorney violates DR 9-102(A) when he (1) fails to deposit funds wholly or partially belonging to his client in a separate clients’ trust account, (2) withdraws funds from the clients’ trust account which are not due him beyond any dispute, or (3) fails to deliver to his client as requested funds which the client is entitled to receive. See DR 9-102, La. Code of Professional Responsibility. The attorney’s mistake, good faith or lack of conscious wrongdoing may mitigate the offense, but does not negate the infraction. In determining the seriousness of the violation as a reflection of the moral character of the attorney, his state of mind and all other relevant factors in the case must be considered. (footnote omitted) Id. p. 122.
Further, in Hinrichs this court set forth some general guidelines for evaluating violations of DR 9-102(A) for the purpose of imposing sanctions. In describing a typical case in which a three year suspension should be imposed we stated that in such cases the lawyer is guilty of at least a high degree of negligence in causing his client’s funds to be withdrawn or retained in violation of the disciplinary rule. He usually does not commit other fraudulent acts in connection therewith. The attorney usually benefits from the infraction but, in contrast with disbarment cases, the client may not be greatly harmed or exposed to great risk of harm. The attorney fully reimburses or pays his client the funds due without the necessity of extensive disciplinary or legal proceedings. LSBA v. Hinrichs, 486 So.2d 116 (La.1986). See also Louisiana State Bar Association v. Wilkins, 449 So.2d 1011 (La.1984); Louisiana State Bar Association v. Daye, 427 So.2d 840 (La.1983) (three year suspension imposed despite forgery and bad faith; but sanction was mitigated by undue delay in disciplinary proceedings); Louisiana State Bar Association v. Stinson, 368 So.2d 971 (La.), cert. denied, 444 U.S. 985, 100 S.Ct. 493, 62 L.Ed.2d 414 (1979).
The evidence is clear and convincing that Robinson violated DR 9-102(A) by withdrawing funds that were not due him beyond dispute from the client’s trust account. There is proof by the same standard that respondent acted with gross negligence toward his clients by repeatedly withdrawing sums from the clients’ trust account for his personal use without keeping even so much as an informal record or estimate of earned fees available to support these disbursements.
The facts of this case involve most of the factors contained in the three-year suspension category outlined above. Robinson clearly was grossly negligent in his extensive misappropriations of his clients’ funds. In fact, if the standard of proof were merely that of a preponderance, we would have to say that Robinson probably intended to take and use his clients funds. No other fraudulent acts were committed in connection with the conversions. Robinson benefited from the infractions by the payment of his personal and family expenses from the funds in his clients’ trust account. The clients were not injured by Robinson’s vio *504 lations but his highly negligent acts created a great risk of damage to them. There is no indication in the record that Robinson would have halted or decreased his violations without Judge Kopfler’s intervention. Moreover, great harm to respondent’s clients was averted only by the fortunate circumstances of Kopfler’s actions and financial strength. Robinson has been practicing for ten years and has not been the subject of any other disciplinary complaints or actions. Under these circumstances, we do not think Robinson should be adjudged to be morally unfit to continue in the practice of law. The violations were serious, however, reflecting a need for a substantial suspension to correct the attorney and further the other disciplinary goals. For the foregoing reasons, we conclude that a three-year suspension from the practice of law is the appropriate sanction in this case.
Accordingly, it is ordered, adjudged, and decreed that Maurice D. Robinson be suspended from the practice of law for three years from the date of finality of this judgment, at respondent’s cost.
ATTORNEY SUSPENDED THREE YEARS.
MARCUS, J., concurs in the result.