443 So.2d 1107 (1983)
LOUISIANA STATE BAR ASSOCIATION
v.
Jerry B. DAYE.
No. 82-B-2812.
Supreme Court of Louisiana.
November 28, 1983.
Rehearing Denied February 2, 1984.
Thomas O. Collins, Jr., Richard A. Deas, Wood Brown, III, New Orleans, Robert J. Boudreau, Lake Charles, Sam J. D'Amico, Baton Rouge, Carrick R. Inabnett, Monroe, Harold J. Lamy, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Pee, Metairie, Roland J. Achee, Shreveport, Gerard F. Thomas, Jr., Natchitoches, for relator.
Dennis C. Weber, Baton Rouge, Jerry B. Daye, Ferriday, for respondent.

DISCIPLINARY PROCEEDINGS
BLANCHE, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted this disciplinary proceeding against Jerry B. Daye, a member of the Louisiana State Bar Association practicing in Ferriday. By certified letters dated July 22, 1982 and September 30, 1982, respondent was informed of four specifications for which disciplinary action was sought. The first two specifications alleged violation of Disciplinary Rules 1-102 and 6-101(A)(3) in that respondent was retained by Ms. Modena Pippens Hockenberry to represent her 1) in an action for damages relating to her purchase of a mobile home, and 2) in the settlement of community property existing between Ms. Hockenberry and her former husband and that respondent failed, despite repeated requests, to take any action to protect the interests of his client, all to her detriment. The third and fourth specifications alleged violations of Disciplinary Rules 1-102 and 9-102 in connection with a sale of property by Ms. Dorothy Culpepper Lee to Mr. and Mrs. J.B. Toney; the specifications charged that respondent received funds for Ms. Lee from the Toneys and, again despite repeated requests, he failed to transfer those funds to his client, but instead commingled *1108 the funds with his own account and for his own use.
After the proper and timely notice given by these letters from the Committee, an investigatory hearing was held on the charges on November 3, 1982, at which respondent failed to appear.
As to the first specifications of misconduct, the uncontroverted evidence at the investigative hearing established that the respondent failed to properly represent his client, Ms. Hockenberry, in obtaining a community property settlement. In fact, respondent failed to take any action in the matter whatsoever, causing loss of valuable property rights to his client. Further, the respondent so neglected to adequately advise and represent Ms. Hockenberry in making a claim against the manufacturer of a mobile home for alleged defects that Ms. Hockenberry was eventually dispossessed of her property.
With respect to the third and fourth specifications of misconduct, the uncontroverted evidence at the investigatory hearing established that respondent was also guilty of having violated Disciplinary Rules 1-102 and 9-102 in connection with funds he received for his client, Ms. Dorothy Culpepper Lee, in connection with an April 9, 1975 credit sale of immovable property from Ms. Lee to Mr. and Mrs. J.B. Toney. The consideration for the sale was $8,500, of which $500 was paid down with the remainder to be paid in monthly installments of $70.00 for five years with a "balloon payment" for the remaining principal and interest to be made at the end of that time. All of the monthly payments were to be made to respondent for Ms. Lee, who was confined to a nursing home at the time of the sale. The monthly payments were paid to respondent until the spring of 1980 when the Toneys became delinquent in their monthly payments. At that time, foreclosure proceedings were instituted as a result of which the Toneys sold personal property and paid to respondent, through his secretary, the balance due of $7,604.00. This sum was paid in cash, and the Toneys were given a receipt therefor. Further, the original promissory note given by the Toneys and identified with the act of credit sale was marked paid by respondent and delivered for cancellation to the Recorder of Mortgages of Concordia Parish.
Ms. Lee is an elderly, incapacitated individual who has been confined to a nursing home for several years. Doris Leland, administrator of the nursing home where Ms. Lee has been maintained since 1979, testified that Ms. Lee had not received any of the monies collected for her benefit by respondent, despite repeated requests. According to Ms. Leland, Ms. Lee was virtually destitute and in debt for medicines, clothing, and other necessities of life to the nursing home. After repeated attempts to speak with respondent, Ms. Leland was finally able to see him in March, 1981, and presented to him a list of debts for payment, as well as a request for money in order to purchase clothing which Ms. Lee needed. Ms. Leland was advised by the respondent that he would go to the bank the next day, get checks for the amounts needed, and make payment, but nothing was ever received. Later, the attorney for the corporation which owned the nursing home, the secretary/treasurer of the corporation and the comptroller were all contacted to assist Ms. Lee in obtaining the funds from the respondent. The attorney and the comptroller each wrote to respondent making demands, but to no avail.
Following the investigative hearing, a petition for disciplinary action against Daye was filed by the Committee; petitioner was served with the petition, but he failed to file any answer. A Commissioner was appointed by this court, and a hearing conducted by him on March 16, 1983. The respondent appeared and represented himself at this hearing, though no evidence in rebuttal was offered, the respondent choosing only to offer an excuse as to why he did not appear at the investigative hearing. Upon respondent's request, the record of the hearing was left open for a period of seven days for the purpose of receiving whatever documentation or correspondence respondent cared to offer on his behalf. *1109 None was received and the record was closed.
The Commissioner found clear and convincing evidence that Daye had violated Disciplinary Rules 1-102 and 6-101(A)(3) in that he neglected legal matters entrusted to him by his client Ms. Modena Pippins Hockenberry. The Commissioner also found clear and convincing evidence that Day had violated Disciplinary Rules 1-102 and 9-102 with respect to the funds collected by him for Ms. Lee's benefit, in that he did not notify his client of the receipt of her funds, did not render appropriate accounts to her regarding these funds, and did not promptly pay or deliver to Ms. Lee the funds despite numerous requests on her behalf. We concur in these findings.
As this court has stated in the past, the purpose of lawyer disciplinary proceedings is not so much to punish the attorney as it is to maintain the appropriate standards of professional conduct in order to protect the public and the administration of justice. See, e.g., Louisiana State Bar Association v. Causey, 393 So.2d 88 (La. 1980), and cases cited therein. High standards of honesty have been erected for those engaged in the legal profession, and all members of the profession are required to take an oath to uphold these ideals of exemplary conduct. Louisiana State Bar Association v. Philips, 363 So.2d 667 (La. 1978); Louisiana State Bar Association v. Haylon, 250 La. 651, 198 So.2d 391 (1967). It can hardly be said that Daye has conducted his practice of law in a manner consistent with the oath he took upon his admission to the Louisiana State Bar Association. To so neglect the legal matters entrusted to him by a client as to result in her loss of substantial property interests cannot be excused, nor has Daye offered any excuse or other evidence of mitigating circumstances. Furthermore, Daye's actions in refusing to pay funds due and owing to his client, despite repeated requests and demands, and despite his awareness that the client was elderly, institutionalized, and virtually destitute are not only reprehensible, but are totally repugnant to the honorable profession to which he laid claim as his own.
Respondent has previously been disciplined for the misappropriation of a client's funds which were converted for his personal purposes. Louisiana State Bar Association v. Daye, 427 So.2d 840 (La.1983). We agree with the recommendation of the Commissioner and the Committee that this pattern of conduct cannot be tolerated. As we have stated repeatedly, the misuse of clients' funds represents the gravest form of professional misconduct and so strikes at the heart of public confidence as to call for disbarment. Louisiana State Bar Association v. Selenberg, 270 So.2d 848 (La. 1972), cert. den. 414 U.S. 1021, 94 S.Ct. 443, 38 L.Ed.2d 312 (1973); Louisiana State Bar Association v. Philips, 363 So.2d 667 (La.1978); Louisiana State Bar Association v. Weysham, 307 So.2d 336 (La.1975); Louisiana State Bar Association v. Haylon, 250 La. 651, 198 So.2d 391 (La.1967). We therefore conclude that the protection of the public and the administration of justice require that the respondent be removed from the practice of law.

DECREE
Accordingly, for the reasons assigned, it is ordered, adjudged and decreed that the name of Jerry B. Daye, respondent, be stricken from the roll of attorneys and his license to practice law in the state of Louisiana be revoked.
DISBARMENT ORDERED.