ATTORNEY DISCIPLINARY PROCEEDINGS
LPER CURIAM.
This disciplinary proceeding involves six counts of misconduct[1] stemming from two sets of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Donald O. Pinkston, an attorney licensed to practice law in Louisiana but currently suspended from the practice of law for conduct unrelated to the instant proceedings.
UNDERLYING FACTS

Small Matter

In 1993, Dwayne Small, respondent’s stepson, pled guilty to manslaughter pursuant to a plea agreement in Orleans Parish Criminal District Court, Section “C.” Mr. Small was sentenced to twenty-one years in prison and began serving his sentence. In 1995, respondent enrolled as counsel of record for Mr. Small and filed a Motion to Correct an Excessive Sentence alleging the court erred in failing to apply the sentencing guidelines to Mr. Small’s plea agreement, which when applied would warrant imposition of a shorter sentence. The district attorney’s office filed an | ^objection to respondent’s motion urging it was illegal to amend a sentence imposed at hard labor after a criminal defendant started serving his time. Additionally, he asserted there was no law mandating the application of sentencing guidelines to plea agreements.
*968 At a hearing conducted on June 25, 1996 by Judge Ike Spears, who was sitting ad hoc in Section “C,” respondent alleged on numerous occasions that he had personally spoken with the district attorney and was assured the State of Louisiana would not object to his motion. Based on respondent’s representations, Judge Spears reduced Mr. Small’s sentence from twenty-one years to twelve years, but stayed the effect of the order to enable the State to file writs.
Days later, the district attorney’s office filed a motion seeking reconsideration of the sentence reduction. Judge Spears kept the stay in place and again continued hearings of the State’s motion to permit respondent an opportunity to confirm his purported agreement with the district attorney’s office. When respondent was unable to do so, Judge Spears granted the State’s motion to reconsider and reinstated Mr. Small’s original twenty-one year sentence.
Prior to a scheduled status conference, Judge Sharon Hunter was elected to fill the vacancy in Section “C,” and the matter passed to her. In November 1996, she held the status conference and determined the matter was closed. The docket entry reflected: “the status hearing considered held and satisfied.”
Thereafter, respondent filed a “Motion to Correct an Illegal Minute Entry” in Mr. Small’s case. For unexplained reasons, that motion appeared on the docket of Section “G,” presided over by Judge Julian Parker.[2] At the hearing on the motion, |3respondent represented to Judge Parker that an administrative error had taken place since Judge Spears had imposed a twelve-year sentence on Mr. Small when the actual sentence should have been nine years. Based on the representations made by respondent, Judge Parker vacated the prior sentence and resentenced Mr. Small to nine years.[3] As a result, Mr. Small was entitled to an immediate release from prison.
Subsequently, Judge Parker reviewed the complete record and learned Judge Spears had in fact reinstated the twenty-one year sentence. Judge Parker advised the parties it was not his intent to re-sentence Mr. Small; rather, he believed, based on what he characterized as “erroneous and misleading representations” from respondent, that he was merely correcting an administrative error of Judge Spears. Accordingly, Judge Parker rescinded his earlier ruling and reinstated Mr. Small’s original sentence of twenty-one years. He ordered respondent to turn Mr. Small back into the custody of the State of Louisiana.
The ODC later conducted an investigation into respondent’s activity in the Small matter.

*969
McDonald, Matter

In May 1996, Kenneth McDonald retained respondent for $3,500 to assist him in his criminal matter pending in the United States District Court for Eastern District of Louisiana. There was no written contract of employment between the parties. At the time, Mr. McDonald was already represented by New Orleans criminal defense |4attorney Frank DeSalvo. Nonetheless, Mr. McDonald wanted respondent to pursue the scheduling of an expeditious bond hearing and negotiate a plea agreement more favorable than that obtained by Mr. DeSalvo.
Subsequently, respondent met with Mr. McDonald on a few occasions and spoke on one or more times with the Assistant U.S. Attorney assigned to the case.[4] Ultimately, Mr. McDonald did not get a bond hearing and he pled guilty relative to an agreement negotiated by Mr. DeSalvo.
On February 28, 1997, Mr. McDonald filed a complaint with the ODC advising that respondent faded to take any action to pursue his legal matter and refused to return the unearned legal fee, despite repeated requests. Contrary to his testimony at the formal hearing, respondent denied he was retained as counsel in the matter since Mr. McDonald was already represented by Mr. DeSalvo. Later, respondent erroneously stated he was retained after Mr. McDonald had already pled guilty and that respondent’s role was “would be to counsel and assist [Mr. McDonald] in calculating the guidelines and searching in the calculation and appealing his sentence if necessary.”

Isaac Matter

In February 1997, Ammie McCrainey Isaac retained respondent for $5,000 to represent her son, Emanuel Isaac, in criminal appellate proceedings. Following a multiple bill hearing, Mr. Isaac was sentenced to twenty years for manslaughter. Respondent filed a timely notice of appeal. Almost one year and one-half after he was retained, respondent wrote to Ms. Isaac stating the appeal was filed on January 26, |,1998. However, while the appeal record in the case was lodged with the court of appeal, the transcript of the hearing and sentencing on the multiple bill were not included. Finding these transcripts to be “essential” for appellate review, the court of appeal ordered respondent five times between January and May 1998 to “take necessary steps to have [the] transcript prepared and forwarded to the Clerk of this Court.” After the record was ultimately supplemented, the court of appeal had to order respondent on three occasions between June and November 1998 to file his assignments of error and brief. Although respondent was granted numerous extensions of time to submit such, he failed to timely comply with the court’s orders. When respondent finally complied with the court’s order on November 2, 1998, the brief relative to the appeal of the trial and sentencing in Mr. Isaac’s homicide case consisted of one assignment of error in a three-page brief.
Subsequently, respondent was suspended from practice of law on unrelated charges in In re: Pinkston, 98-1926 (La.12/11/98), 728 So.2d 381. As a result, Ms. Isaac retained other counsel, who filed a supplemental brief and completed the appellate representation. She asked that respondent provide an accounting and return the unearned fee, but he failed to do so.

*970
Alston Matter

In early 1997, Felishia Alston, a California resident, filed a complaint against respondent alleging she retained respondent for $8,000 to represent Dalshawn Boson in criminal proceedings pending in Orleans Parish Criminal District Court. She contended respondent neglected the legal matter, failed to communicate with his client and withdrew from the representation prior to completing the matter, as well as refused to account for or return the unearned portion of the fee. Ultimately, the parties submitted to alternative fee dispute arbitration through the Louisiana State Bar | Association. On November 17, 1998, the appointed arbitrator rendered a written decision finding respondent incompetently and negligently handled the criminal matter, as well as failed to communicate with his client. She concluded respondent owed Ms. Alston $3,000 of the advanced fee. Subsequently, when respondent neglected to pay any portion of the owed fee, Ms. Alston had to retain counsel to file a civil action against respondent. Ms. Alston obtained a judgment against respondent, but respondent failed to satisfy the judgment.

Jones Matter

On December 11, 1998, this court rendered an order in In re: Pinkston, 98-1926 (La.12/11/98), 728 So.2d 381, suspending respondent from the practice of law for a period of two years. After this court denied respondent’s application for rehearing (making the suspension a final judgment), respondent accepted payment of $1,000 from Hilda Jones for the criminal representation of her son. Subsequently, Ms. Jones learned of respondent’s suspension from practice when he failed to appear for a court hearing in her son’s case. Respondent refused to refund the fee until August 1999, when prompted by Ms. Jones’ filing of a disciplinary complaint with the ODC.

Motton Matter

In 1995, Agnes Motton and Zina Nunnery retained respondent for $2,300 to represent Frank Motton in post-conviction criminal proceedings pending in Orleans Parish Criminal District Court. Mr. Mot-ton had been convicted of first degree murder and sentenced to life in prison. Respondent filed an application for post-conviction relief raising a claim of newly-discovered evidence. According to court records, the matter was scheduled for an evidentiary hearing, but was rescheduled on three occasions for various reasons. After March 1996, respondent failed to take any action |7in the case, nor did he refund his unearned fee, despite repeated requests.
In January 1998, Ms. Motton and Ms. Nunnery filed a complaint with the ODC advising of respondent’s neglect of a legal matter, failure to communicate and failure to return the unearned fee. While respondent filed a response denying any misconduct on his part, he conceded he neglected to complete the legal matter due to his suspension in In re: Pinkston, 98-1926 (La.12/11/98), 728 So.2d 381, and agreed he owed a refund of some portion of the fee.
DISCIPLINARY PROCEEDINGS

Formal Charges

After investigation, the ODC filed two separate sets of formal charges against respondent. The first set, filed in April 1999, involved the Small matter and alleged violations of Rules 1.2(c) (counsel or encourage a client to engage in conduct that the lawyer knows is criminal or fraudulent), 3.3(a)(1) (false statement of material fact or law to a tribunal), 3.3(a)(2) (conceal that which attorney is required by law to reveal), 3.3(a)(4) (offer evidence known *971 to be false), 8.4(a) (violating the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
In May 2001, the ODC filed a second set of charges, involving the McDonald, Isaac, Alston, Jones and Motton matters. These charges alleged Rules 1.3 (lack of diligence), 1.4 (failure to communicate), 1.5 (failure to refund client funds), 1.15(b) (failure to promptly account for and deliver funds or property owed to a client or third party), 1.16(d) (failure to protect client interests upon termination of representation), 5.5(a) (unauthorized practice of law), 8.1(a) (knowingly make a false statement of material fact in connection with a disciplinary matter or bar admission matter or ^application), 8.4(a) (violating the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
Respondent filed answers to both sets of formal charges. Separate hearings were conducted before different hearing committees.

Recommendations of the Hearing Committees

With regard to the Small matter, the hearing committee concluded respondent made several misrepresentations to Judge Parker, specifically, that Judge Hunter had recused herself, Judge Spears had reduced Mr. Smalls sentence to twelve years when the twenty-one year sentence had been reinstated, and that the minute entry by Judge Spears was erroneous and should be corrected to further reduce Mr. Small’s sentence to nine years. The hearing committee noted the misrepresentations resulted in the temporary release of Mr. Small from prison. Further, the committee found, while it was not clear whether respondent improperly caused the transfer to Judge Parker’s section, respondent “nevertheless took advantage of it” to obtain the illegal release of his stepson.
Based on these conclusions, the hearing committee found respondent violated Rules 3.3(a)(1) (false statement of material fact or law to a tribunal), 3.3(a)(2) (conceal that which attorney is required by law to reveal), 3.3(a)(4) (offer evidence known to be false), 8.4(a) (violating the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation) and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.
The committee recognized respondent’s cooperation in the disciplinary 1 flproceedings as a mitigating factor. As aggravating factors, the committee identified respondent’s prior disciplinary record[5] and substantial experience in the practice of law. Applying these factors to the baseline sanction of disbarment, the committee concluded disbarment is appropriate under the facts.
A separate hearing committee heard the McDonald, Isaac, Alston, Jones and Mot- *972 ton matters. This committee found as follows:
In the McDonald matter, the committee concluded respondent violated Rule 1.5(f)(6) by failing to refund client funds, as he led Mr. McDonald to reasonably believe that, for $3,500 he would successfully obtain a bond hearing or favorable sentencing, which respondent failed to do.
In the Isaac matter, the committee found respondent failed to diligently pursue Mr. Isaac’s appeal and failed to adequately communicate with his client, in violation of Rule 1.3.
In the Alston matter, the committee determined respondent engaged in conduct prejudicial to the administration of justice in violation of Rule 8.4(d) when he failed to satisfy his $3,000 obligation owed to Ms. Alston.
In the Jones matter, the committee concluded respondent violated Rule 1.5(f)(6) when he failed to refund the $1,000 retainer fee paid by Ms. Jones in connection with her son’s criminal matter at the time he was suspended from the practice of law.
In the Motton matter, the committee found violations of Rules 1.3 (lack of diligence) and 1.5(f)(6) (failure to refund client funds) based on respondent’s admission that there were several hearing continuances over a period of several years |inon Mr. Motton’s writs for habeas corpus and that he did not earn the entirety of the fee paid. While the committee stated there was evidence that respondent did not fully communicate with his clients, the committee neglected to find a violation of Rules 1.4 (failure to communicate) and 1.16(d) (failure to protect client interests at termination of representation).
As aggravating factors, the committee noted respondent’s prior disciplinary record, pattern of misconduct and substantial experience in the practice of law. The sole mitigating factor was respondent’s cooperation in the disciplinary proceedings. Applying these factors to the baseline sanction of suspension, the committee recommended a thirty-month suspension and payment of restitution to Mr. McDonald, Ms. Isaac, Ms. Alston, Ms. Motton and Ms. Nunnery.

Recommendation of the Disciplinary Board

With minor modifications, the disciplinary board accepted the factual findings of the hearing committees.[6] The board found respondent knowingly and intentionally violated duties owed to his clients, the public, the legal system and the profession. As to the Small matter, the board stated the actual injury to the legal system and the public was present in that respondent misrepresented the true status of Mr. Small’s sentence to the court “and Mr. Small, a violent criminal, was released from prison years before his scheduled release date.” As to the remaining client matters subject Inof the *973 instant proceedings, the board stated actual injury resulted from respondent’s neglect of legal matters, failure to promptly provide accountings and return unearned fees to his clients.
The board adopted the mitigating and aggravating factors cited by the committees, as well as found respondent’s substantial experience in the practice of law should have been considered as an aggravating factor. Finding respondent’s actions show his lack of regard for his clients and for his professional obligations as a member of the bar, the board recommended that respondent be disbarred from the practice of law. It further ordered respondent to make restitution to his victims.
Respondent filed an objection to the disciplinary board’s recommendation. Accordingly, the matter was docketed for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G).
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343, 348; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444, 445 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record supports the hearing committees’ findings that the charges against respondent have been proven by clear and convincing evidence.
|i;,In the Small matter, the only logical conclusion to be drawn from the evidence is that respondent intentionally and deliberately misrepresented the facts to the court in an effort to obtain a more lenient sentence for Mr. Small. Respondent initially represented to Judge Spears that the district attorney’s office had agreed not to oppose the motion to reduce Mr. Small’s sentence, when in fact it should have been obvious to respondent that no such agreement had been made by the district attorney’s office. Based on respondent’s false representations, Judge Spears reduced Mr. Small’s sentence. After Judge Spears reinstated Mr. Small’s sentence, the case mysteriously appeared on Judge Parker’s docket in another section of court. Respondent has offered no cogent explanation of how the case ended up in that section. At one point, he indicated that the transfer was based on the recusal of a judge; at another time, he indicated the case simply appeared on the docket to his surprise, and he was fortuitously in that section of court at the time the case was called. In any event, respondent represented to Judge Parker that he was simply asking to correct an administrative error in a minute entry, which would result in Mr. Small being sentenced to nine years. At no time did respondent call Judge Parker’s attention to the fact that Judge Spears had reinstated Mr. Small’s sentence to twenty-one years. Based entirely on respondent’s representations, which Judge Parker later characterized as “erroneous and misleading,” Mr. Small’s sentence was reduced to nine years, entitling him to an immediate release.
Although respondent adamantly asserts he had no improper motives in this matter, *974 he offers no evidence in support of his contentions. Rather, he simply asks this court to disbelieve every witness who testified in these proceedings, including the trial judges and a representative of the district attorney’s office, who were found to be credible by the hearing committee. We are not prepared to disregard the findings of fact made by the hearing committee. Accordingly, we find the charges in the Small | ^matter are proven by clear and convincing evidence.
In the remaining matters, the record clearly demonstrates respondent neglected legal matters, failed to promptly provide accountings and failed to return unearned fees to his clients. The charges in these matters display a disturbingly similar scenario in which respondent collects fees for a criminal representation, neglects the matter and then refuses to refund his unearned fees.
Having found evidence of professional misconduct, the sole issue presented for our consideration is the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
In the Small matter, respondent’s conduct unquestionably violates Rule 3.3, in that he made false statements to a court and concealed evidence from the court which he should have revealed. Such practices “violate the most fundamental duty of an officer of the court.” Commentary to Standard 6.11 of the ABA Standards for Imposing Lawyer Sanctions. As explained by Standard 6.11, the baseline sanction for violations of Rule 3.3 is disbarment. Nonetheless, we find respondent’s conduct in the Small matter is so egregious that ordinary disbarment would be inappropriate. Accordingly, we now turn to a discussion of permanent disbarment.
The sanction of permanent disbarment is set forth in the 2001 amendment to | uSupreme Court Rule XIX, § 10[7] and § 24.[8] In our commentary accompanying the amendment, we stated, in pertinent part:
In the public interest, the Court has amended Louisiana Supreme Court Rule XIX to codify Permanent Disbarment as *975 an available sanction for attorney misconduct. While the Court has always had the discretion to deny an application for readmission after the requisite five (5)-year waiting period after disbarment, an attorney who is permanently disbarred under these circumstances will be prohibited from applying for readmission to the bar. These amendments reflect the judgment of the Court that in some instances lawyer misconduct may be so egregious as to warrant a sanction of permanent disbarment based on the facts of an individual case and in consideration of the guidelines in Appendix E to the Rules of Lawyer Disciplinary Enforcement.
In Appendix E, we set forth several guidelines illustrating the type of cases which might warrant permanent disbarment. We explained that these guidelines were not intended to bind this court in its decisionmaking, but to provide “useful information to the public and to lawyers concerning the types of conduct the Court might consider to be worthy of permanent disbarment.”
Guideline 2 of Appendix E provides that an attorney’s “[ijntentional corruption l1Bof the judicial process” is a ground for permanent disbarment. Clearly, respondent’s actions in the Small matter must be considered an intentional corruption of the judicial process.
As recently noted in In re: Morphis, 01-2803 (La.12/4/02), 831 So.2d 934, we do not impose the sanction of permanent disbarment lightly. Nonetheless, we are firmly convinced that we would be remiss in our constitutional duty to regulate the practice of law if we did not impose that sanction here. By making false representations and concealing facts, respondent subverted the judicial process to his own ends. He engaged in conduct that was calculated to frustrate the administration of justice. This court cannot and will not condone such conduct by an attorney when high standards of honesty are expected. See Louisiana State Bar Ass’n v. Haylon, 250 La. 651, 198 So.2d 391, 392 (1967). Respondent’s actions convincingly demonstrate that he does not possess the requisite moral fitness to practice law in this state. He must be permanently disbarred.[9]
Accordingly, we will permanently disbar respondent from the practice of law in the State of Louisiana.
DECREE
Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, it is ordered that the name of Donald O. Pinkston, Louisiana Bar Roll No. 17429, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent |1fibe permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. The matter originally involved a total of eight counts. Two of the counts were dismissed by the hearing committee, based on a finding that the ODC failed to prove these charges by clear and convincing evidence. The ODC has not objected to this finding; accordingly, these counts will not be addressed further.

. In a subsequent hearing, respondent stated the case was remanded to Section "G” by Judge Hunter who recused herself from the matter. However, at another hearing, respondent professed to be unaware as to why the case appeared on the docket in Section “G.” He stated: "Your Honor, I have no idea. I have no connections with this building. I have no connections with Judge Hunter. I have no connections with the court. All I know is that the case was on the docket, I received a subpoena, I showed up.” Later, in oral argument before this court, respondent indicated that he had not received a subpoena in the case, but was in Section "G” on an unrelated matter when the case was called.

. Judge Parker was apparently unaware of Judge Spears' earlier judgment reinstating the original sentence of twenty-one years. In subsequent appellate proceedings, Judge Parker explained the minute entry reflecting Judge Spears’ reversal of the June 25, 1996 ruling and reinstating the sentence of twenly-one years was "missing” from the record when he acted on the case.

. Mr. DeSalvo wrote to the ODC that, to his knowledge, respondent had contacted on one occasion the U.S. Attorney, who advised that he would not discuss or negotiate the matter because respondent was not counsel of record. According to Mr. DeSalvo, respondent had essentially no part in the criminal matter.

. In In re: Pinkston, 98-1926 (La.12/11/98), 728 So.2d 381, respondent was suspended from the practice of law for a period of two years for failure to maintain clients’ funds in trust and failure to pay a third party medical provider over a period of several years. Respondent has not sought readmission. Additionally, respondent was admonished on four prior occasions between 1994 and 1995 for failing to respond to disciplinary complaints. Finally, in 1997, respondent was reprimanded for misleading clients, failing to return unearned fees and commingling of client funds.

. The board found minor errors regarding the committee's findings relative to the McDonald, Isaac and Motton matters. As to the McDonald matter, the board concluded the committee erred in failing to find a violation of Rule 8.4(a) (violating the Rules of Professional Conduct), although it admitted this finding added little, if anything, to the sanction imposed. As to the Isaac matter, the board determined the committee erred in finding violations of Rule 1.4 and 1.5(f)(6) since respondent was not charged with a violation of these rules, but found the committee erred in failing to find a violation of Rule 1.16(f) (failure to protect client interests at termination of representation) as respondent did not notify Ms. Isaac of his suspension, surrender her property and refund any unearned fees. Lastly, as to the Motton matter, the board pointed out that, although there was evidence respondent did not adequately communicate with his clients, the committee neglected to find a violation of Rule 1.4 (failure to communicate).

. Supreme Court Rule XIX, § 10(A) was amended to add the highlighted language:
(1) Disbarment by the court. In any order or judgment of the court in which a lawyer is disbarred, the court retains the discretion to permanently disbar the lawyer and permanently prohibit any such lawyer from being readmitted to the practice of law.

. Supreme Court Rule XIX, § 24(A) was amended to add the highlighted language:
A disbarred lawyer or a suspended lawyer who has served a suspension period of more than one year, exclusive of any waivers or periods of deferral, shall be reinstated or readmitted only upon order of the court.... No lawyer may petition for readmission until five years after the effective date of disbarment. A lawyer who has been placed on interim suspension and is then disbarred for the same misconduct that was the ground for the interim suspension may petition for readmission at the expiration of five years from the time of the effective date of the interim suspension. The court retains the discretion, in accordance with Section 10A of this rule, to permanently disbar a lawyer and permanently prohibit any such lawyer from being readmitted to the practice of law.

. Having determined that respondent must be permanently disbarred for his conduct in the Small matter, we need not address the appropriate sanction for the other counts of misconduct, although respondent’s actions in these matters only reinforces our view that he lacks the moral fitness to practice law.